******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD CIVIE ET AL. *v.* CONNECTICUT
SITING COUNCIL
(AC 36628)

Lavine, Alvord and Bear, Js.

*Argued April 15—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of New Britain, Lee, J.)

*Victor Civie*, self-represented, and *Richard Civie*, self-represented, with whom, on the brief, was *Howard Altschuler*, for the appellants (plaintiffs).

*Seth A Hollander*, assistant attorney general, with whom were *Robert L. Marconi*, assistant attorney gen-

eral, and, on the brief, *George Jepsen*, attorney general, for the appellee (defendant).

*Lauren Henault Bidra*, staff attorney, with whom were *Victoria P. Hackett*, staff attorney, and, on the brief, *Elin Swanson Katz*, consumer counsel, for the appellee (intervening defendant Office of Consumer Counsel).

*Anthony M. Fitzgerald*, for the appellee (intervening defendant Connecticut Light and Power Company).

*Opinion*

LAVINE, J. The plaintiffs, Richard Civie and Victor Civie, appeal from the judgment of the trial court dismissing their administrative appeal from a decision of the defendant, the Connecticut Siting Council (siting council), granting the intervening defendant, Connecticut Light and Power Company (power company),[1] a certificate of environmental compatibility and public need (certificate).[2] See General Statutes § 16-50g et seq. of the Public Utility Environmental Standards Act (environmental act). The court dismissed the appeal after concluding that the plaintiffs were not classically aggrieved, as required under the Uniform Administrative Procedure Act (UAPA); General Statutes § 4-166 et seq.; and therefore lacked standing. On appeal, the plaintiffs claim that the court erred in concluding that they were not aggrieved by the siting council's granting of the certificate to the power company.[3] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the claim on appeal. The plaintiffs own property at 160 Beech Mountain Road in Mansfield. On December 23, 2011, the power company applied, pursuant to the environmental act, for a certificate for the construction, maintenance, and operation of an electric transmission line as part of the Interstate Reliability Project. A portion of the transmission line would cross the plaintiffs' property, utilizing an easement granted to the power company by the immediate predecessor in interest on the property. The plaintiffs were aware of the easement when they bought the property. The easement provides in relevant part: "[A] perpetual easement, privilege and right of way 300 feet wide for electric lines for the transmission for electric currents of any character necessary or convenient from time to time in the conduct of the Grantee's business." Another transmission line already crosses the property, which is permitted under the existing easement. The siting council rendered its final decision on December 27, 2012. Having found that there was a public need for the proposed Interstate Reliability Project and that its implementation was not in conflict with policies of the state, the siting council granted the certificate to the power company.

The plaintiffs appealed from the final decision of the siting council to the Superior Court.[4] The plaintiffs alleged that the siting council's decision violates the environmental act, the UAPA, and the due process clause of the United States constitution. In their briefs on the merits, the defendants claimed that the court lacked subject matter jurisdiction over the appeal because the plaintiffs were not aggrieved by the granting of the certificate. The plaintiffs requested a hearing on the issue of aggrievement only, which the court granted. On November 8, 2013, the court held an eviden-

tiary hearing at which the plaintiffs advanced the following two grounds to prove aggrievement: "(1) loss of economic value of timber that will be cleared for the second transmission line in the easement and of the ability to grow and harvest replacement trees in the future in the new line's footprint; and (2) a contention that the red aircraft warning lights to be affixed to the top of the transmission towers constitutes an overburdening of the easement."

In its memorandum of decision, the court found that the plaintiffs failed to prove aggrievement sufficient to confer standing in order to appeal from the final decision of the siting council. The court concluded that the plaintiffs were not classically aggrieved, and, therefore, it lacked subject matter jurisdiction to hear the plaintiffs' appeal. Specifically, the court found the plaintiffs lacked aggrievement "(1) because they have not shown [a] direct, cognizable loss arising from the clearance of vegetation beneath the new transmission line because (a) that activity is authorized by the relevant easements, and (b) they have not adduced sufficient proof of monetary harm; and (2) because the tower warning lights (a) are authorized by the easements as fixtures or appurtenances, and (b) plaintiffs have failed to prove any specific legal detriment from the lights, which is the 'lynchpin of classical aggrievement.' " Finding that the plaintiffs were not aggrieved, the court dismissed their appeal.[5] This appeal followed. Additional facts will be set forth as necessary.

"It is well settled that [p]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved. . . . Aggrievement presents a question of fact for the trial court and the party alleging aggrievement bears the burden of proving it. . . . We do not disturb the trial court's conclusions on appeal unless those conclusions are unsupported by the subordinate facts or otherwise violate law, logic or reason." (Internal quotation marks omitted.) *Wallingford* v. *Zoning Board of Appeals*, 146 Conn. App. 567, 575, 79 A.3d 115, cert. denied, 310 Conn. 964, 83 A.3d 346 (2013).

"In reviewing a finding of aggrievement, our standard of review is well settled. Aggrievement presents a question of fact for the trial court. . . . We do not, therefore, disturb such a finding unless the subordinate facts do not support it or it is inconsistent with the law. . . . We will reverse the trial court only if its conclusions are clearly erroneous and violate law, logic, or reason or are inconsistent with the subordinate facts." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 287, 771 A.2d 167 (2001).

On appeal, the plaintiffs claim that the court erred

in concluding that they were not classically aggrieved by the siting council's decision. Specifically, the plaintiffs contend that they proved a nonspeculative injury to their specific, personal, and legal interest in this case. After reviewing the record on appeal, we are persuaded that the decision of the trial court should be affirmed.

"Aggrievement is essentially a question of standing; without it, a court must dismiss an action for want of jurisdiction. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory. . . .

"Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) *Brouillard* v. *Connecticut Siting Council*, 133 Conn. App. 851, 856, 38 A.3d 174, cert. denied, 304 Conn. 923, 41 A.3d 662 (2012).

In its memorandum of decision, the court found that the plaintiffs demonstrated that they had a " 'specific, personal and legal interest' in the controversy because the construction of the new transmission line runs in a right-of-way across their property and will require the removal of trees which they own." The court reasoned, however, that the plaintiffs' appeal failed on the second requirement that a party must also show the agency's decision has specially and injuriously affected that specific personal or legal interest. Thereafter, the court concluded that the plaintiffs "failed to establish a colorable claim of direct, cognizable loss sufficient to show aggrievement."

"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . A fair reading of relevant decisional law makes it clear, nevertheless, that proof of a possibility of specific harm is not the same as mere speculation regarding harm." (Citation omitted; internal quotation marks omitted.) *Goldfisher* v. *Connecticut Siting Council*, 95 Conn. App. 193, 197–98, 895 A.2d 286 (2006).

The plaintiffs claim they are injured by the removal of trees. They argue that their "personal property, the forest, will be destroyed, a renewable resource will be lost forever, and there will be no future timber harvests." The court found, however, that the plaintiffs' claim of diminution of its harvesting timber revenue was insufficient to prove aggrievement because the claimed harm is explicitly permitted under the applicable easement. The existing easement provides in relevant part that the power company has: "[T]he right to trim, cut, take down and remove, at any and all times, such trees,

parts of trees, limbs, branches, underbrush and struc-
tures, within or projecting into the above described
right of way . . . .”

The plaintiffs contend that their injury was nonspecu-
lative because they presented evidence of the value
of the harvested timber from the forest, which was
approximately $1658. This evidence was countered by
the defendants’ evidence that the cleared wood would
be left for the plaintiffs to remove and sell. In addition,
the plaintiffs testified that any future values of the tim-
ber could not yet be predicted.

Lastly, the court found that the plaintiffs’ claim that
the warning lights on the new towers will overburden
the easement was insufficient to establish
aggrievement. The Federal Aviation Administration
directed that warning lights should be placed on top of
the new transmission towers because of their proximity
to a local airport. The court concluded that “the warning
lights are incident to the transmission towers and are
fixtures or appurtenances authorized under the ease-
ment.” The plaintiffs also failed to present nonspecula-
tive evidence of any impact the warning lights would
have on their property value or its esthetic condition.

Because the existing easement explicitly allows the
construction of the new transmission line and the plain-
tiffs failed to prove a specific legal detriment, the court
properly concluded they were not classically aggrieved.
In coming to this conclusion, the court made factual
findings that are supported by the record and the plain-
tiffs have failed to demonstrate that the court’s findings
were clearly erroneous. Accordingly, we conclude that
the court properly dismissed the plaintiffs’ appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On February 26, 2013, the trial court granted the Office of Consumer
Counsel’s motion to intervene in the administrative appeal because it is the
statutory advocate for consumer interest that may affect the state’s utility
ratepayers. On February 28, 2013, the court also granted Connecticut Light
and Power Company’s motion to intervene. References herein to the defen-
dants are to the siting council, the power company and the Office of Con-
sumer Counsel, collectively.

[2] The Public Utility Environmental Standards Act (environmental act)
states one of its purposes is to “provide for the balancing of the need for
adequate and reliable public utility services at the lowest reasonable cost
to consumers with the need to protect the environment and ecology of the
state and to minimize damage to scenic, historic and recreational values
. . . .” General Statutes § 16-50g. The power company was required to apply
for a certificate before commencing the construction of the new electric
transmission line pursuant to the environmental act. General Statutes
§ 16-50k.

[3] In their appellate brief, the plaintiffs also claim that they were statutorily
aggrieved because their “interest in the destruction of their personal prop-
erty, the trees and forest, is regulated by [the environmental act] and falls
within the zone of the interests protected by the statute.” They raised no
such claim before the trial court. The trial court found that the “[p]laintiffs
claim classical aggrievement only.” Because the plaintiffs never presented
to the trial court the claim of statutory aggrievement that they now pursue
on appeal, we decline to afford it review. See Practice Book § 60-5; see also
*Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d

670 (1996) (claims "neither addressed nor decided" by trial court not properly before Appellate Court).

[4] Appeals to the Superior Court from the final decisions of the siting council are governed by the UAPA. See General Statutes §§ 16-50q and 4-183.

[5] The plaintiffs moved for an articulation and raised, inter alia, two questions relating to why the court found they were not aggrieved. On September 9, 2015, the court granted the articulation and stated that the "plaintiffs are attempting to raise an argument directed to the merits of the [siting council's] decision" and the hearing was limited to the issue of jurisdiction, i.e., aggrievement.